FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAY 21 2024

TAMMY H. DOWNS, CLERK
By: _____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**LAUREN SCHILLING**                                             **PLAINTIFF**

v.                        Case No. 4:24-CV-447-LPR

**D2 TRAFFIC TECHNOLOGIES, LLC AND
JOGAN HEALTH, LLC**                                              **DEFENDANTS**

## ORIGINAL COMPLAINT

COMES NOW Lauren Schilling, by and through her attorneys Chris Burks and Stewart Whaley of WH LAW, for her Original Complaint against D2 Traffic Technologies, LLC and Jogan Health, LLC, she does hereby state and allege as follows:

### I. PRELIMINARY STATEMENTS

1. Plaintiff brings this action against the Defendants for violation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. Code § 2000(e)2 ("Title VII") and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, et seq. ("ACRA") for declaratory judgment, monetary damages, liquidated damages, prejudgment interest, and costs, including reasonable attorneys' fees, as a result of Defendants' discriminatory and retaliatory actions toward Plaintiff, resulting in her termination.

2. Plaintiff received inequitable treatment and an adverse employment action as a result of her sex, which is female, and in retaliation for her complaints about sex discrimination and harassment.

3. Upon information and belief, Defendants have willfully and intentionally committed violations of Title VII and ACRA, as described, *infra*.

This case assigned to District Judge Rudofsky
and to Magistrate Judge Kearney

## II. JURISDICTION AND VENUE

4. The United States District Court for the Eastern District of Arkansas has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because this suit raises federal questions under the Title VII.

5. Plaintiff's claims under ACRA form part of the same case or controversy and arise out of the same facts as Title VII claims alleged in this Complaint.

6. Therefore, this Court has supplemental jurisdiction over Plaintiff's ACRA claims pursuant to 28 U.S.C. § 1367(a).

7. The acts complained of herein were committed and had their principal effect within the Central Division of the Eastern District of Arkansas. Accordingly, venue is proper within this District pursuant to 28 U.S.C. § 1391.

8. Defendants do business in this District and a substantial part of the events alleged herein occurred in this District.

9. The witnesses to Title VII and ACRA violations alleged in this Complaint reside in this District.

## III. THE PARTIES

10. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

11. Plaintiff is a resident and citizen of Pulaski County, Arkansas.

12. Plaintiff Lauren Schilling was hired by Defendants in 2023 as a Regional Sales Manager.

13. Plaintiff was terminated from her employment with Defendants on March 29, 2024.

14. At all material times, Plaintiff has been entitled to the rights, protection, and benefits provided under Title VII and ACRA.

15. Defendant D2 Traffic Technologies, LLC is a limited liability company incorporated in the State of Delaware.

16. Defendant D2 Traffic Technologies, LLC can be served through its agent for service, Resident Agents Inc., at 8 The Green, Suite R, Dover, DE 19901.

17. Defendant Jogan Health, LLC is a limited liability company headquartered in the State of Colorado.

18. Defendant Jogan Health, LLC can be served through its agent for service, Resident Agents Inc., at 1942 Broadway St., Suite 314C, Boulder, CO 80302.

19. At all times, Defendants jointly controlled the terms and conditions of Plaintiff's employment, including the work she performed and the policies and procedures she followed during her employment.

20. The operations of D2 Traffic Technologies and Jogan Health, LLC, are interconnected, as Jogan Health, LLC is the parent company of D2 Traffic Technologies.

21. Plaintiff worked for D2 Traffic Technologies and represented herself as an agent of this company, but Plaintiff was paid by Jogan Health, LLC, which was D2 Traffic Technologies' parent company.

22. Plaintiff reported her issues to Human Resources employees who worked for Jogan Health, LLC, and Plaintiff received an employee handbook from Jogan Health, LLC, which governed the policies and procedures Plaintiff followed during her employment.

23. As a result, Defendants D2 Traffic Technologies and Jogan Health were at all times jointly and severally an "employer" within the meanings set forth in Title VII and ACRA, and were, at all times relevant to the allegations in this Complaint, Plaintiff's employer.

## IV.  FACTUAL ALLEGATIONS

24. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

25. Defendants hired Plaintiff in early 2023 as a Regional Sales Manager.

26. Plaintiff's job duties involved selling Defendants' traffic management technology products throughout the United States.

27. Beginning in July 2023, Plaintiff's direct supervisor Eric Gannaway began making unwanted sexist and sexual comments to Plaintiff while they were traveling together performing their job duties.

28. These comments were severe, pervasive, and shocking, to the degree that Plaintiff's workplace became hostile to her.

29. Gannaway made comments to Plaintiff about other women's physical appearance, including comments on their breasts. He asked Plaintiff to comment on other women's bodies, which Plaintiff refused to do. He asked Plaintiff if she would surgically modify her own body. He made homophobic jokes and comments to Plaintiff. He made repeated angry, aggressive, and derogatory comments about gender-neutral bathrooms and the LGBTQIA community, such as telling Plaintiff that it was unnecessary for people to identify their pronouns online and that bumper stickers supporting LGBTQIA rights were inappropriate for public display.

30. Gannaway made derogatory comments to Plaintiff about transgender women they saw on a work trip and attempted to induce Plaintiff to make similar remarks, even though he knew that Plaintiff had a transgendered sibling.

31. On September 19, 2023, Plaintiff reported her supervisor's conduct to Bernard Presutti, the Vice President of Human Resources for Defendant Jogan Health, LLC.

32. In addition to reporting the ongoing harassment, Plaintiff expressed that she was afraid she would be retaliated against after making this report.

33. Plaintiff was told her report would be investigated.

34. On September 29, 2023, Presutti updated Plaintiff, telling her he had been able to corroborate many of the incidences she reported about Gannaway, but that because Gannaway was older, he did not believe his comments or behavior were malicious.

35. Immediately after this protected report of sex discrimination, Defendants began retaliating against Plaintiff.

36. On October 2, 2023, Plaintiff had a phone call with Defendants' Director of Sales, Matt Bretoi, who told Plaintiff he was pleased with her performance and that he did not feel it was necessary for him to continue conversations with Human Resources about her performance issues.

37. Until this point, Defendant had not raised any concerns about Plaintiff's performance with her. Further, Plaintiff did not understand why Bretoi would be engaging in conversations with HR about her performance as Bretoi was not her supervisor.

38. On October 9, 2023, Defendants told Plaintiff they were reassigning her to report to Bretoi. Defendants did not raise any concerns about Plaintiff's performance or her ability to perform her job duties.

39. On October 10, 2023, Defendants told Plaintiff they were significantly reducing her sales territory and the number of products she was allowed to sell.

40. Plaintiff had previously been allowed to sell six products, but was now only allowed to sell one, LiDAR, which was still in development.

41. Even though Plaintiff was a key part of the development of LiDAR as the Regional Sales Manager assigned to sell this product, Defendants intentionally and deliberately omitted Plaintiff from meetings and communications about LiDAR.

42. When Plaintiff asked her new supervisor why she was being excluded from all internal discussions regarding this product, Bretoi told her it was within his discretion to make a judgment call not to include her.

43. When Plaintiff requested a higher level of involvement in the product so she could better perform her job duties, such as being included in briefings on the status of product testing, training calls with product partners, participation in on-site installations, and a factory tour, Bretoi denied these requests.

44. Male employees supervised by Bretoi did not have their sales territory or their product slate reduced, nor were they prohibited from participating in training on their products or denied the opportunity to participate in on-site installations and factory tours.

45. These male comparators did not have a history of making protected reports to Defendant about sex discrimination.

46. As a result of the ongoing harassment and retaliation, Plaintiff made a second report to Defendants' Human Resources on October 25, 2023. Plaintiff also disclosed that she intended to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC")

as a result of Defendant's ongoing sex discrimination and retaliation after Plaintiff's report of sexual harassment.

47. The next day, on October 26, 2023, Gannaway told Plaintiff he was rescinding his approval for her to attend a large regional trade show, even though she had already reserved a booth and set up a numerous meetings and network opportunities with prospective contacts.

48. This trade show was the largest one in Plaintiff's reduced sales territory. The loss of these meetings and opportunities seriously damaged Plaintiff's ability to succeed in her position, especially after her territory and her slate of products had already been reduced.

49. No other team members, including the male sales managers supervised by Bretoi, had their attendance at trade shows cancelled in 2023.

50. On November 30, 2023, Plaintiff filed a Charge of Discrimination with the EEOC for sex discrimination and retaliation.

51. Plaintiff received a Notice of Right to Sue letter from the EEOC on February 26, 2024.

52. Just three days after Plaintiff received this letter, Defendants placed her on a sixty-day Performance Improvement Plan ("PIP").

53. This was the first time Defendants ever informed Plaintiff directly that she had performance issues. The PIP included events dating back to April 2023 as evidence of her supposed "poor performance," even though these events were not raised to Plaintiff at the time they occurred. It also contained performance reviews from Bretoi for periods where Plaintiff had not worked for Bretoi, and Bretoi had no opportunity to observe her performance.

54. Despite the ongoing retaliation from Defendants, Plaintiff wanted to remain in her position, and she committed herself to meeting the goals set for her on the PIP.

55. Bretoi seemed pleased by Plaintiff's efforts, telling her she made "thorough" progress and appearing optimistic about new sales relationships Plaintiff was developing.

56. On March 22, 2024, Bretoi abruptly told Plaintiff she was "nowhere close" to meeting some of the goals set for her on her PIP, despite previously telling her that her progress was thorough. Bretoi also told Plaintiff he was unable to view her written updates in an activity dashboard, even though he had viewed and previously made changes to her dashboard on more than one occasion.

57. On March 29, 2024, Plaintiff was terminated for supposed performance issues.

58. During her employment, Plaintiff's direct supervisor subjected her to ongoing harassment, based on her sex, which was female.

59. Plaintiff reported this sexual harassment to Defendants' Human Resources Department.

60. Defendants failed to take any actions to address the harassment Plaintiff reported, and instead began retaliating against Plaintiff by reducing the number of products she was allowed to sell and reducing her sales territory.

61. Defendants further harassed and retaliated against Plaintiff by refusing to include her in development meetings, trainings, and communication related to the only product she was allowed to sell, and denying her requests to be involved in these events and emails.

62. After Plaintiff made a second report to Defendants about retaliation and disclosed that she intended to file an EEOC charge, Defendants retaliated against her the very next day by

revoking her permission to attend an important trade show, even though Defendants had already paid for the booth and Plaintiff had already scheduled numerous meetings and networking opportunities.

63. Similarly situated male employees did not have their sales territory or their slate of products reduced, nor were they denied the opportunity to attend trade shows (particularly when they had already reserved booths) or denied the opportunity to participate in trainings, meetings, and communications regarding products they sold.

64. Just three days after Plaintiff received a Notice of Right to Sue letter from the EEOC, Defendants placed Plaintiff on a PIP for supposed performance issues that had never been disclosed to her at the time they occurred, although Defendant represented they had been going on for months.

65. Despite her supervisor telling her she had made thorough progress on her PIP, Plaintiff was then told she was "nowhere close" to meeting some of the goals on her PIP.

66. Finally, Plaintiff was terminated on March 29, 2024.

67. The reasons for Plaintiff's termination were pretextual.

68. Plaintiff was terminated because of ongoing harassment based on her sex, which is female, and retaliation based on her reports of harassment to Defendants and to the EEOC.

### V.    FIRST CLAIM FOR RELIEF – Title VII Claims

69. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

70. Plaintiff filed a timely charge with the EEOC, received a right to sue letter, and thus exhausted her administrative remedies.

71. Defendants engaged in unlawful employment practices in the Central Division of the Eastern District of Arkansas in violation of 42 U.S. Code §2000e-2.

72. Specifically, and as detailed above, Plaintiff, who is female, was terminated as a result of ongoing sexual harassment and retaliation.

73. Defendants employ men who were not subject to the same treatment that Plaintiff experienced during her employment.

74. Specifically, Plaintiff was subjected to harassment when her supervisor made homophobic jokes to her, commented about women's bodies and physical appearance, asked Plaintiff to comment on other women's bodies, asked Plaintiff if she would ever surgically modify her body, and made angry, derogatory comments about gender neutral bathrooms, using identifying pronouns, and bumper stickers that supported LGBT rights.

75. Defendants' male employees were not subjected to these ongoing offensive, shocking, and demeaning comments.

76. After reporting harassment to Defendants and to the EEOC on multiple occasions, Plaintiff was discriminated against and retaliated against when her sales territory and product list were reduced, she was denied the opportunity to participate in meetings, trainings, and communications about the product she was allowed to sell, she was denied the opportunity to attend a trade show that Defendants had previously approved, she was placed on a PIP, and finally, she was terminated.

77. Defendants employ men and individuals who did not complaint to them about harassment.

78. These individuals were allowed to sell a larger slate of products, attend trade shows, and participate in meetings, trainings, and communications about products they sell.

79. These individuals did not have their sales territory reduced and they were not placed on PIPs and terminated.

80. As a result, Plaintiff was treated disparately from Defendants' male employees and employees who did not report harassment to Defendants and to the EEOC.

81. At all relevant times, Plaintiff could perform the essential function of the position for which she was hired.

82. However, Plaintiff was terminated from her position within the relevant statutory period.

83. The effect of the practices complained of above have been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her race.

84. The unlawful employment practices complained of above were and are intentional.

85. The unlawful employment practices complained of above were done with reckless indifference to the federally protected rights of Plaintiff.

86. Pursuant to Title VII of the 1964 Civil Rights Act, as amended, Plaintiff is entitled to, and she seeks, an additional amount as compensatory and punitive damages equal to the sum of her lost wages or salary, benefits and/or other compensation denied or lost to her by reason of Defendants' violations of Title VII, plus any interest she is entitled to for these causes, because Defendants' action were malicious and Defendants had no reasonable grounds for believing that its actions were not in violation of Title VII.

## VI.   SECOND CLAIM FOR RELIEF – ACRA Claims

87. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

88. Plaintiff has timely filed a charge with the EEOC, received a right to sue letter, and has thus exhausted her administrative remedies.

89. Defendants engaged in unlawful employment practices in the Central Division of the Eastern District of Arkansas in violation of 42 U.S. Code §2000e-2.

90. Specifically, and as detailed above, Plaintiff, who is female, was terminated as a result of ongoing sexual harassment and retaliation.

91. Defendants employ men who were not subject to the same treatment that Plaintiff experienced during her employment.

92. Specifically, Plaintiff was subjected to harassment when her supervisor made homophobic jokes to her, commented about women's bodies and physical appearance, asked Plaintiff to comment on other women's bodies, asked Plaintiff if she would ever surgically modify her body, and made angry, derogatory comments about gender neutral bathrooms, using identifying pronouns, and bumper stickers that supported LGBT rights.

93. Defendants' male employees were not subjected to these ongoing offensive, shocking, and demeaning comments.

94. After reporting harassment to Defendants and to the EEOC on multiple occasions, Plaintiff was discriminated against and retaliated against when her sales territory and product list were reduced, she was denied the opportunity to participate in meetings, trainings, and communications about the product she was allowed to sell, she was denied the opportunity to

attend a trade show that Defendants had previously approved, she was placed on a PIP, and finally, she was terminated.

95. Defendants employ men and individuals who did not complaint to them about harassment.

96. These individuals were allowed to sell a larger slate of products, attend trade shows, and participate in meetings, trainings, and communications about products they sell.

97. These individuals did not have their sales territory reduced and they were not placed on PIPs and terminated.

98. As a result, Plaintiff was treated disparately from Defendants' male employees and employees who did not report harassment to Defendants and to the EEOC.

99. At all relevant times, Plaintiff could perform the essential function of the position for which she was hired.

100. However, Plaintiff was terminated from her position within the relevant statutory period.

101. The effect of the practices complained of above have been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her race.

102. The unlawful employment practices complained of above were and are intentional.

103. The unlawful employment practices complained of above were done with reckless indifference to the federally protected rights of Plaintiff.

104. Pursuant to Arkansas Civil Rights Act, as amended, Plaintiff is entitled to, and she seeks, an additional amount as compensatory and punitive damages equal to the sum of her lost

wages or salary, benefits and/or other compensation denied or lost to her by reason of Defendants' violations of ACRA, plus any interest she is entitled to for these causes, because Defendants' action were malicious and Defendants had no reasonable grounds for believing that its actions were not in violation of ACRA.

## VII.  PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff Lauren Schilling respectfully prays that Defendants be summoned to appear and to answer herein as follows:

(A)  A declaratory judgment that Defendants' practices violate Title VII of the Civil Rights Act of 1964, 42 U.S. Code § 2000(e)-2 and the related regulations;

(B)  A declaratory judgment that Defendants' practices violate the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, *et seq.* and the related regulations;

(C)  Judgment for damages pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S. Code §2000(e)-2, *et seq.* for all compensation, compensatory, and punitive damages owed to Plaintiff;

(D)  Judgment for damages pursuant to Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, *et seq.*, for all compensation owed Plaintiff for back pay and associated interest and fees;

(E)  An order directing Defendants to pay compensatory and punitive damages to Plaintiff along with pre-judgment interest, reasonable attorney's fees, and all costs connected to this action;

(F)  Such other and further relief as this Court may deem necessary, just and proper.

(G)

Respectfully submitted,

**Lauren Schilling, PLAINTIFF**

WH Law
North Little Rock Office
501.888.4357

By: Chris Burks (ABN: 2010207)
chris@wh.law
Stewart Whaley (ABN: 2009084)
stewart@wh.law

Mailing Address:
1 Riverfront Place, Suite 745 North Little Rock, AR 72114